**Felix F. BASHINSKY**

v.

**David MATHEWS, as Secretary of Health, Education and Welfare.**

**Civ. A. No. 76–2034.**

United States District Court, E. D. Pa.

July 6, 1977.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Michael B. L. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is an action for Black Lung benefits under the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 921 et seq. Following the denial of his claim by an Administrative Law Judge ("ALJ") and the Appeals Council of the Social Security Administration, the plaintiff appealed to this Court. Both the plaintiff and the defendant have moved for summary judgment based on the administrative record. Because the decision below is not supported by substantial evidence, the plaintiff's motion will be granted.

■ The plaintiff first challenges the administrative decision on the ground that the ALJ did not set forth his findings in serially numbered paragraphs, with references to the appropriate pages in the record. I have reviewed the ALJ's decision and the entire record. The plaintiff's objections to the format of the decision are without merit, since the format adopted by the ALJ is quite sufficient to permit review by this Court.

Plaintiff next attacks the ALJ's consideration of the X-ray evidence in the record. X-ray examinations of the plaintiff were made on December 9, 1971, January 7, 1972 and November 5, 1973. Although all of these films initially were read as positive for pneumoconiosis, each film was reread as negative by a B reader certified by the National Institute for Occupational Safety and Health ("NIOSH"). The plaintiff contends that the Social Security Administration is not legally authorized to obtain rereadings of X-rays submitted by a claimant. This contention must be rejected.

■ The Social Security Administration is authorized to collect additional evidence at any time by 20 C.F.R. § 410.240(a). In addition, 42 C.F.R. § 37.52 provides that:

"All chest roentgenograms interpreted by A readers will be submitted . . . to a B reader qualified as described in section 37.51, whose interpretation will be final. If the first interpretation is by a B reader, it shall be final."

In this case, all of the X-ray interpretations submitted by the plaintiff were by A readers, or readers not certified by NIOSH. Thus, the above-quoted regulation *required* the Social Security Administration to obtain rereadings by certified B readers. I agree with other recent district court decisions holding that the Social Security Administration is authorized to obtain rereadings of X-rays submitted by claimants. See *Kalades v. Mathews*, C.A. No. 76–249 (E.D.Pa. November 5, 1976) (Broderick, J.); *Welsh v. Weinberger*, 407 F.Supp. 1043 (D.Md.1975).

■ After the rereadings were admitted into evidence, the ALJ was confronted with inconsistent X-ray interpretations. The resolution of such conflicts in the evidence is a matter for the administrative agency, not the Court. See *Campbell v. Weinberger*, 402 F.Supp. 1147 (N.D.W.Va. 1975); *Welsh v. Weinberger, supra.* Espe-

cially in view of the greater weight to be given to readings by certified B readers, the ALJ's finding that the claimant did not establish the presence of pneumoconiosis through X-rays is supported by substantial evidence.

However, several other aspects of the administrative decision are inadequate, and require that the administrative decision be reversed. First of all, on the issue of the length of the plaintiff's coal mining employment, the ALJ made the following finding: "The claimant has at least 8 years of coal mining employment." (Record, at 17). Based on this finding, the plaintiff was not able to take advantage of the interim presumptions applicable to a miner who establishes 10 years of coal mine employment. See 20 C.F.R. § 410.490(b).

At the administrative hearing, the plaintiff substantiated approximately eight years of coal mine employment through social security records. In addition, the plaintiff testified to at least 3 or 4 years (and perhaps more) of independent mining during the 1930's. The ALJ misstated some of this testimony in his opinion, and offered no reasons for rejecting the plaintiff's testimony. Because of the prevalence of "bootleg mining" in the anthracite region in the 1930's, the absence of employment records is an insufficient reason for rejecting otherwise credible testimony of coal mining employment in independent mines. See *Karpovich v. Mathews*, 426 F.Supp. 1316 (E.D. Pa.1977) (Troutman, J.), In addition, the finding of "at least 8 years of coal mine employment" is not much help in deciding whether the plaintiff is entitled to the presumptions available to miners with 10 or 15 years of coal mine employment. See *Litwak v. Secretary of H.E.W.*, 430 F.Supp. 586 (1977) (Broderick, J.). I find that the plaintiff clearly has established more than ten years of coal mine employment, and is entitled to the presumptions of the interim rules. If the case were to be remanded, the ALJ should make a more precise determination of the length of the plaintiff's coal mine employment.

The administrative decision also did not adequately consider the plaintiff's pulmonary function studies. A test done on March 27, 1972 yielded results well within the criteria established by the Social Security Administration. However, the results of this study were rejected by the ALJ for the sole reason that the study "was reviewed by a specialist who states the test was unsatisfactory." (Record, at 15). The professional qualifications of the "specialist," a Dr. Goldstone, do not reveal any particular expertise in the area of respiratory illness in general or pulmonary function tests in particular. Dr. Goldstone's evaluation consists only of the checking of 3 out of 5 possible reasons for invalidating the test, without any explanation of how these findings were made. Dr. Goldstone noted that the test was unsatisfactory because "effort and/or cooperation less than optimal," despite the fact that the person who actually administered the test indicated that the patient cooperated. While it is possible that the March 27, 1972 test is unsatisfactory, the ALJ's summary rejection of the test is not supported by substantial evidence on the present record. Thus, the March 27, 1972 test is strong evidence of the plaintiff's entitlement to benefits.

The most basic error in the administrative decision is the ALJ's treatment of the "other relevant evidence" submitted by the plaintiff. This evidence consisted of medical reports and testimony by plaintiff's physician, Dr. William Dzurek, a medical report dated January 5, 1972 from Dr. Homer Boysen, and the plaintiff's own testimony. The plaintiff testified at length about his shortness of breath, chronic coughing, regular spitting up of grayish phlegm, chest pains, and extreme difficulty climbing steps. Both Dr. Boysen and Dr. Dzurek diagnosed the plaintiff as suffering from pneumoconiosis, and Dr. Dzurek's diagnosis was based upon clinical examinations, X-rays, exercise tolerance tests and ventilatory studies.

The ALJ provided no explanation whatsoever for his rejection of Dr. Dzurek's testimony. This in itself is grounds for remanding the case to the agency for further explanation. See *Sweigert v. Math-*

ews, No. 76–2140 (January 13, 1977) (Troutman, J.).

In evaluating the plaintiff's testimony, the ALJ stated:

"Careful consideration has been given in this case to the testimony of the claimant and although this testimony is supportive of the claim, it is believed to fall short of establishing entitlement in the light of the weight of the contrary objective medical evidence. The medical evidence discloses negative X-rays and PFS ventilatory test results which are greater than the minimums established in the interim adjudicatory criteria. The medical evidence therefore outweighs the subjective evidence . . . ." (Record, at 16).

It is apparent from this statement that the ALJ accepted the plaintiff's testimony as credible, but ruled against the plaintiff on the basis of the medical evidence.

In reaching this conclusion, the ALJ relied on negative X-ray interpretations and on a pulmonary function study dated August 1, 1975. Social Security Administration regulations provide that no claim for benefits is to be denied solely because of a negative X-ray. 20 C.F.R. § 410.414(c). The 1975 pulmonary function study yielded an $FEV_1$ of 2.6 liters and an MVV of 64 liters per minute. For a man 67 inches tall the interim rules require values equal to or less than 2.3 liters for $FEV_1$ and 92 liters per minute for MVV. While plaintiff's study does not meet the requirements set forth in the interim rules since the $FEV_1$ value exceeds 2.3 liters, it certainly is not strong evidence of the plaintiff's good health. In fact, the study was interpreted as showing a moderate to severe degree of pulmonary obstructive disease.

Thus, the medical evidence which the ALJ found to "outweigh" the subjective evidence is far from overwhelming. It consists of X-rays interpreted as both positive and negative, and a pulmonary function study which very nearly meets the interim adjudicatory rules, and was interpreted as showing a moderate to severe impairment. Moreover, the difficulty of proving the presence of pneumoconiosis through objective medical tests was recognized by Congress and was one reason that the statute permits proof of the disease through "other relevant evidence." See 1972 U.S.Code Cong. and Admin.News at 2307.

Opposed to this inconclusive medical evidence are the medical reports and opinion of Dr. Dzurek, the opinion of Dr. Boysen, and the plaintiff's uncontradicted testimony which shows a serious breathing impairment. This evidence is almost entirely ignored by the ALJ. From examining the entire record, it appears to me that the only possible conclusion that can be reached is that the claimant has established that he was totally disabled within the relevant period due to pneumoconiosis. In the absence of some acceptable explanation for the ALJ's rejection of all evidence favorable to the plaintiff and his complete reliance on rather inconclusive unfavorable evidence, I am unable to find that the administrative decision is supported by substantial evidence.

Since the evidence of record compels the conclusion that the plaintiff is entitled to benefits, I will grant the plaintiff's motion for summary judgment. However, if the defendant believes that it could produce substantial evidence to support denial of the plaintiff's claim on remand, it may file an appropriate motion.